UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANDREW M. OBREGON,

                Petitioner,

v.                                                         Case No. 22-cv-1513-bhl

CHRIS BUESGEN, Warden,

                Respondent.

## ORDER DENYING § 2254 HABEAS PETITION

On December 15, 2022, Petitioner Andrew Obregon filed a petition for writ of habeas corpus, challenging his custody under a judgment of conviction and sentence entered in Kenosha County Circuit Court, Case No. 2015CF1041. Briefing on the merits of his petition is now completed and, for the reasons stated below, Obregon's petition will be denied.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2015, Obregon was a suspect in the murder of Tywon Anderson. (ECF No. 17-3 at 2.) After evading arrest for several weeks, police were alerted to Obregon's location when he severely beat a woman in Brighton, Wisconsin and then stole her vehicle and fled to Lake County, Illinois. (*Id.*) Law enforcement personnel were able to track the vehicle and ultimately apprehended Obregon, but only after a skirmish that left him with gunshot and canine-bite wounds to his right arm. (*Id.*)

After being treated at an Illinois hospital, Obregon was transported to and detained at a local police station. (*Id.*) While in custody, Kenosha County Sheriff's Department detectives interviewed Obregon on October 13, 15, and 16. (*Id.* at 2–3.) Prior to each interview, Obregon was given a *Miranda* warning and each time he waived his rights before making statements. (*Id.*

---

[1] In deciding a habeas petition, the Court presumes the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden to rebut that presumption by "clear and convincing evidence." *Id.* The statement of background facts is as set forth by the Wisconsin Court of Appeals in its decision affirming Obregon's conviction. (ECF No. 17-3); *see also State v. Obregon*, No. 2019AP758-CR, 2021 WL 6131529 (Wis. Ct. App. Dec. 29, 2021) (unpublished disposition). Additional procedural facts are taken from Obregon's habeas petition. (ECF No. 1.)

at 3.) On November 4, 2015, Obregon was charged in Kenosha County Circuit Court with thirty-two counts, including first degree intentional homicide for the shooting death of Anderson. (*Id.*)

During his subsequent prosecution, Obregon sought the suppression of statements he made during the October 13, 15, and 16 interviews. (*Id.*) He argued that the statements were involuntary and the waivers he signed invalid. (*Id.*) He also insisted that his statements on October 15 were obtained in violation of his right to counsel. (*Id.*) At an evidentiary hearing, the circuit court reviewed videos of the interviews and heard testimony from a detective who was present at all three interrogations. (*Id.*) It then found that (1) Obregon's statements were made voluntarily; (2) he had knowingly, intelligently, and voluntarily waived his rights following *Miranda* warnings prior to each interview; and (3) the detectives' questioning of him on October 15 did not violate his right to counsel. (*Id.*) After the ruling, Obregon agreed to plead guilty to several of the counts against him, including first-degree intentional homicide, armed robbery with use of force, and fleeing an officer by vehicle. (*Id.* at 3–4; ECF No. 1 at 2.) The court sentenced him to life imprisonment. (ECF No. 17-3 at 4.)

Obregon subsequently filed a post-conviction motion seeking to withdraw his guilty plea on grounds that his counsel had been ineffective. (*Id.* at 4.) The circuit court denied the motion. (*Id.*) Obregon then filed an appeal, arguing that his in-custody statements were involuntary, his waiver of his *Miranda* rights was not knowing, voluntary or intelligent, and the statements he made on October 15, 2015, should have been suppressed because they were obtained in violation of his right to counsel. (*Id.*) On December 29, 2021, the Court of Appeals affirmed Obregon's conviction, and, on March 16, 2022, the Wisconsin Supreme Court denied review. (ECF No. 1 at 3.) Obregon did not seek further post-conviction relief. (*Id.* at 5.)

On December 15, 2022, Obregon filed a federal habeas petition asserting four grounds for relief. (ECF No. 1.) In ground one, Obregon contends his Sixth Amendment rights were violated and "the state court erroneously failed to clarify whether once a suspect is represented by counsel, the Sixth Amendment guarantees him the right to rely on that counsel as a medium between him and the state to minimize the system's imbalance and ensure that the proceedings are fair." (*Id.* at 7–8.) In ground two, Obregon contends his "in-custody statements were involuntary" and should have been suppressed by the circuit court. (*Id.* at 10.) In ground three, Obregon contends his waivers of his *Miranda* rights were "not knowing, voluntary or intelligent." (*Id.* at 11.) In ground four, Obregon contends his in-custody statements on October 15, 2015, were "obtained in violation

of his right to counsel and should have been suppressed on that basis as well." (*Id*. at 12.)  The parties have briefed Obregon's grounds for relief.  (ECF Nos. 23, 24 & 25.)  For the reasons set forth below, Obregon is not entitled to habeas relief and his petition will be denied.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a federal court's ability to grant habeas corpus relief.  With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).  It is intentionally very difficult to meet.  *See Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is contrary to clearly established Federal law within the meaning of Section 2254(d)(1) if the state court "applies a rule different from the governing law set forth" by Supreme Court precedent or "decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court decision unreasonably applies established precedent within the meaning of Section 2254(d)(2) when the "state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  It is not enough that "a federal court believes the state court's determination was incorrect" or erroneous.  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)).  As the Supreme Court has emphasized, "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'"  *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

# ANALYSIS

Obregon's petition faces an initial hurdle because he is challenging a criminal conviction after entering a guilty plea. The Supreme Court has held that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollet v. Henderson*, 411 U.S. 258, 267 (1973). Obregon gains some room from Wisconsin procedure, which permits a defendant to appeal the denial of a motion to suppress his prior statements even after pleading guilty. Wis. Stat. § 971.31(10). Where a state permits a defendant to appeal certain issues despite a guilty plea, those issues may be pursued in habeas corpus. *See Lefkowitz v. Newsome*, 420 U.S. 283, 289–92 (1975).

In his petition, Obregon identifies four grounds for relief, although his first and fourth grounds are premised on the same underlying constitutional violation. Obregon first invokes the Sixth Amendment and contends that because he was represented by appointed counsel on October 15, 2015, he should not have been interviewed without the presence of counsel. (ECF No. 1 at 7–8.) Second, Obregon argues that the record shows a violation of his Fourteenth Amendment right against involuntary statements. (*Id.* at 10.) Third, Obregon contends that the waivers he signed after receiving *Miranda* warnings were not knowing, voluntary or intelligent in violation of the Fifth Amendment. (*Id.* at 10–11, 28.) Fourth, Obregon contends the statements he made on October 15, 2015, were obtained in violation of his Sixth Amendment right to counsel and should have been suppressed. (*Id.* at 12.) As noted above, Obregon's first and fourth grounds both challenge the admissibility of statements he made when he was questioned by detectives on October 15, 2015, and the Court will therefore address both grounds together. Regardless of how his grounds are categorized and analyzed, Obregon has not demonstrated that federal habeas relief is warranted. Accordingly, his petition will be denied.

**I.    Obregon Has Not Shown that the Wisconsin Court of Appeals Unreasonably Applied Federal Law in Concluding that His In-Custody Statements Were Voluntary.**

After he was arrested, Kenosha County detectives interviewed Obregon three times. (ECF No. 17-3 at 2–3.) Prior to each interview, Obregon was given a *Miranda* warning and then affirmatively waived his rights before making any statements. (*Id.* at 3.) Notwithstanding these signed waivers, Obregon claims the statements he made were involuntary because he was traumatized after having been shot in the arm by police and bitten by a police dog. (ECF No. 23

at 16.) Obregon admits that he had been given medical treatment for his injuries but claims that morphine had been administered and instead of letting him sleep off the morphine, the police "insisted on questioning him." (*Id.* at 16–17.)

The Wisconsin Court of Appeals considered and rejected Obregon's voluntariness challenge. It noted that Obregon was 32 years old and had been administered *Miranda* warnings by the police in the past, sometimes invoking his rights and sometimes not, that he had a tenth-grade education, the ability to read and write, and did not appear impaired during any of the interviews. (ECF No. 17-3 at 5.) The appellate court further explained:

> Obregon received medical care for his injuries and was taken to the police station only after he was cleared for release by medical professionals. No questioning occurred for several hours after Obregon arrived at the police station, during which time he was placed in an interview room, provided with food and drink, and was told that he would be given time alone to eat and relax. He requested to be released from handcuffs and was. Additionally, police responded adequately to Obregon's requests for a blanket and for something to rest his wounded arm on. Just before the questioning began, he used the bathroom and he asked for and was provided with Tylenol. Obregon appears to have slept at various times between the time he was provided with food and the time the interview commenced.

(*Id.* at 6.)

Obregon does not challenge these findings, so the Court is obligated to treat them as correct. *See* 28 U.S.C. § 2254(e)(1). Instead, he cites three Supreme Court cases, which he argues support his claim that his statements were not voluntary: *Brown v. Mississippi*, 297 U.S. 278 (1936); *Lego v. Twomey*, 404 US. 477 (1972) and *Oregon v. Elstad*, 470 U.S. 298, 314 (1985). (ECF No. 23 at 16–17.) As explained below, these cases do not help him because all are factually different than Obregon's circumstances.

In *Brown*, the Supreme Court vacated several defendants' convictions after concluding that police officers had extorted statements from the defendants through "brutality and violence." 297 U.S. at 279, 287. The Court described how defendants had been coerced into making statements based on threats of continued beatings "unless and until they confessed." *Id.* at 281–82. After confessing, the defendants were convicted and sentenced to death. *Id.* at 279. The Supreme Court vacated the convictions, concluding the confessions were coerced and emphasizing that there was no evidence other than the forced confessions that would have supported the convictions. *Id.* at

284. Obregon's case is easily distinguishable. Although Obregon was shot by the police and bitten by a police dog during his arrest, these injuries were not inflicted to coerce a confession; they were the result of Obregon's own conduct in intentionally fleeing from police officers. (ECF No. 17-3 at 2.) Moreover, Obregon does not allege that the detectives threatened him in any way in connection with his statements, and there is no evidence they engaged in any conduct remotely close to the abuse inflicted upon the defendants in *Brown*. In fact, Obregon admits that the authorities arranged for treatment of his injuries and that he was provided food, drink, and a blanket, as well as Tylenol, prior to the questioning. His situation bears no resemblance to the batteries described in *Brown*. If this were not enough, Obregon has also not shown that his conviction rested solely on statements to police, another key aspect of *Brown*.

In *Lego*, the Supreme Court addressed the prosecution's burden of proof in connection with a challenge to the voluntariness of a defendant's statements. *Id.* at 478–79. The Court explained that once the trial judge renders a "clear-cut determination that the confession . . . was in fact voluntary," the defendant nevertheless retains the freedom to "familiarize a jury with circumstances that attend the taking of his confession, including facts bearing upon its weight and voluntariness." *Id.* at 483–86. The Supreme Court held that "the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary." *Id.* at 489. These holdings have no application here. Obregon does not argue that the circuit court failed to make the required finding of voluntariness and because Obregon pleaded guilty, the issue never reached a jury. *Lego* simply does not support Obregon's claim.

Finally, in *Elstad*, the Supreme Court addressed "whether an initial failure of law enforcement officers to administer the warnings required by [*Miranda*], without more, 'taints' subsequent admissions made after a suspect has been fully advised of and has waived his *Miranda* rights." 470 U.S. at 300. *Elstad* does not address the issue of voluntariness at all. It too is therefore irrelevant to Obregon's claim.

Obregon's habeas argument seems to be that the Wisconsin Court of Appeals incorrectly determined that his statements were voluntary. As noted above, when a habeas petitioner alleges that the state court unreasonably applied controlling Supreme Court precedent, he must show that the state court's application of Supreme Court holdings was "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 575 U.S. at 316 (citation omitted). Under this deferential standard, the state court's ruling stands unless "there is no possibility fairminded jurists

could disagree" that it conflicts with Supreme Court precedent. *Harrington*, 562 U.S. at 102. Here, the court of appeals reasonably concluded that, as a matter of law, Obregon's statements were voluntary. (ECF No. 17-3 at 5–7.) Obregon has failed to show that the Wisconsin Court of Appeals misapplied federal law or decided his voluntariness challenge in a way that is contrary to U.S. Supreme Court precedent. His voluntariness challenge is therefore denied.

II. **The State Court's Decision on the Merits of Obregon's Third Ground Was Neither Contrary to Nor an Unreasonable Application of Supreme Court Precedent.**

In his third ground, Obregon contends that the waivers he signed after he received his *Miranda* warnings were not knowing, voluntary or intelligent and thus any use of his subsequent statements violated the Fifth Amendment. (ECF No. 1 at 10–11, 28.) At the outset, Respondent argues that this claim is not cognizable in federal habeas corpus because the challenged statements were never used against Obregon at trial. (ECF No. 24 at 13–17.) "[A] *Miranda* violation that never becomes a constitutional violation does not implicate §§ 2241 or 2254 because with respect to the Self-Incrimination Clause, 'a constitutional violation occurs only at trial.'" (*Id.* at 14 (quoting *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (plurality opinion) (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990).) As the Supreme Court explained in *Verdugo-Urquidez*, "[t]he privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial." 494 U.S. at 264 (citations omitted). The Supreme Court recently reaffirmed *Chavez*'s plurality opinion that a violation of *Miranda* alone does not violate the Constitution, calling the contrary view "insupportable." *See Vega v. Tekoh*, 597 U.S. 134, 149 (2022).

The Court agrees with Respondent that because the State did not use Obregon's statements at trial, he has no Fifth Amendment claim here. Although *Vega* was a Section 1983 case, there is no reason for a different application in habeas corpus. Section 1983 applies to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C. § 1983, and Section 2241 and 2254 apply to "violation[s] of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3), 2254(a). Because Obregon pleaded guilty, there was no trial

and therefore, no constitutional violation occurred.² The Court agrees with Respondent that this ground is not cognizable on habeas.

Even if this theory were cognizable, the record does not support Obregon's claim. Obregon contends that he did not "understand that he was being questioned or what was going on" because he was "under duress" and on morphine. (ECF No. 23 at 18.) But the Wisconsin Court of Appeals' legal analysis in rejecting Obregon's argument was reasonable. With respect to its legal reasoning, the appellate court first cited *State v. Ward*, which holds that a waiver is valid "where it is 'the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and has 'been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" (ECF No. 17-3 at 7 (quoting *Ward*, 767 N.W. 2d 236, 248 (Wis. 2009).) It also cited *State v. Lee*, 499 N.W. 2d 250, 255 (Wis. Ct. App. 1993), for the standard that for a custodial statement to be admissible, the state has to show that the defendant was informed of his *Miranda* rights, understood them, and knowingly, intelligently, and voluntarily waived them. (*Id.* at 8.) The *Lee* court in turn relied on the U.S. Supreme Court cases of *Miranda v. Arizona,* 384 U.S. 436 (1966), *Colorado v. Connelly*, 479 U.S. 157 (1986), and *Colorado v. Spring*, 479 U.S. 564 (1987). There is nothing remotely problematic with the court of appeals' legal analysis.

The state courts also reasonably found that Obregon waived his right against self-incrimination and made knowing, intelligent, and voluntary statements. (ECF No. 17-3 at 7.) The evidence showed that Obregon was read the *Miranda* warnings, he then asked to read for himself the information on the *Miranda* waiver form, and he was provided with as much time as he needed before signing the waiver. (*Id.* at 8.) The appellate court also noted that Obregon's past encounters with the criminal justice system and exercise of his rights on some of those occasions further demonstrated the knowing, intelligent, and voluntary nature of his waiver. (*Id.*) The detectives asked Obregon if he understood the form or had any questions and in response, Obregon motioned for a pen and signed the form. (*Id.*) The detectives also informed Obregon that they would

---

² Neither Respondent nor Petitioner has cited any case where the Supreme Court has approved habeas corpus relief based on a *Miranda* claim where the petitioner pleaded guilty such that the challenged statement was never introduced against him at trial. (*See* ECF No. 24 at 14 n.6.) The Court agrees with Respondent that at a minimum, there is no clear Supreme Court caselaw indicating that there is a constitutional violation under such circumstances. *See* 28 U.S.C. § 2254(d)(1).

terminate the interview unless he consented to speak with them. (*Id.* at 8 n.9.) Thus, no improper custodial interrogation occurred.

In sum, the state courts identified the correct governing legal principles and applied them appropriately to the facts before them. Obregon has not cited any caselaw at all in support of his *Miranda* claim and instead refers the court to his voluntariness argument under Ground Two. (*See* ECF No. 23 at 17–18.) Obregon has failed to show that the Wisconsin Court of Appeals misapplied federal law or decided his challenge that his waiver of his *Miranda* rights was not knowing, voluntary or intelligent contrary to U.S. Supreme Court precedent with materially indistinguishable facts. Accordingly, Obregon's third ground is rejected as well.

### III. The State Court's Rejection of Obregon's Right to Counsel Arguments Was Neither Contrary to Nor an Unreasonable Application of Supreme Court Precedent.

Obregon's first and fourth habeas grounds relate to statements he made when questioned by Kenosha County detectives on October 15. He argues that the detectives violated his Sixth Amendment rights by questioning him about the Wisconsin offenses after counsel had been appointed to represent him for matters pending in Illinois, but without Illinois counsel present.[3] (ECF No. 1 at 12, 17–18; ECF No. 23 at 18–19.) The Wisconsin Court of Appeals rejected this argument based on established precedent from both the United States Supreme Court and the Wisconsin Supreme Court: *State v. Delebreau*, 864 N.W.2d 852 (Wis. 2015) and *Montejo v. Louisiana*, 556 U.S. 778 (2009). (ECF No. 17-3 at 9–12.)

In *Montejo* and *Delebreau*, the U.S. Supreme Court and the Wisconsin Supreme Court each respectively held that when a defendant is read his *Miranda* rights, including his right to have counsel present during the interrogation, and agrees to waive those rights, the waiver is considered knowing and voluntary and any subsequent statement is admissible against the defendant. *See Montejo*, 556 U.S. at 798–99; *Delebreau*, 864 N.W.2d at 862. In both cases, the defendants were represented by counsel when they were administered *Miranda* warnings and then waived their rights. *Montejo*, 556 U.S. at 781–82; *Delebreau*, 864 N.W.2d at 856. "[T]he Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary,

---

[3] In Ground One, Obregon argues that "the state court erroneously failed to clarify whether once a suspect is represented by counsel, the Sixth Amendment guarantees him the right to rely on that counsel as a medium between him and the state to minimize the system's imbalance and ensure that the proceedings are fair." (ECF No. 1 at 7-8.) As previously noted, Ground One is redundant to Ground Four and will be addressed in this section of the Court's order.

knowing and intelligent." *Montejo*, 556 U.S. at 786 (citations omitted) ("[W]hen a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the *Miranda* rights purportedly have their source in the *Fifth* Amendment."). A defendant who wishes to invoke his Sixth Amendment right to counsel must affirmatively do so. *Id.* at 797. The government is permitted to initiate contact with a represented criminal defendant, subject only to the requirement that the questioning stop if a defendant adequately asserts this right. *Id.* at 789. While "a defendant who does not want to speak to police without counsel present need only say as much when he is first approached and given *Miranda* warnings," *id.* at 794, the request for counsel must be clear and unambiguous. *See id.* at 797. A defendant's failure to invoke his Sixth Amendment right to counsel may constitute a waiver of that right; however, such a waiver is only permitted if it is "voluntary, knowing, and intelligent." *Id.* at 786.

As the Wisconsin Court of Appeals explained, *Montejo* and *Delebreau* make "clear that the fact of representation does not result in the categorical exclusion of uncounseled statements." (ECF No. 17-3 at 11.) It also stated that "a defendant is sufficiently apprised of his or her Sixth Amendment right to counsel by the *Miranda* warnings, and that a valid *Miranda* waiver effectively waives the Sixth Amendment right to counsel." (*Id.* (citing *Delebreau*, 864 N.W.2d at 862).) Based on this analysis, the Wisconsin Court of Appeals rejected Obregon's challenge to the admissibility of his post-*Miranda* statements to the Kenosha detectives.

Obregon challenges the Wisconsin Court of Appeals' analysis, insisting that *Delebreau* is distinguishable from his case. Obregon insists that while the defendant in *Delebreau* "had been represented at one court appearance by a staff attorney of the Wisconsin State Public Defender," nothing in the decision confirms "that that attorney was actually appointed to represent the defendant." (ECF No. 23 at 18–19.) If this is a distinction at all, it is one without a difference and has no bearing on Obregon's claims. The bottom line is that caselaw confirms that "[d]efendants are not entitled to a presumption that their waiver of the presence of counsel is invalid, even if they are already represented by counsel." *Delebreau*, 864 N.W.2d at 862 (citing *Montejo*, 556 U.S. at 789–90.) Moreover, even if the cases were distinguishable, Obregon does not identify a U.S. Supreme Court case that is materially indistinguishable from his own in which the U.S. Supreme Court came to a contrary result. That is his burden in a habeas proceeding.

The best that Obregon can do is cite four inapplicable Supreme Court cases: *Michigan v. Jackson*, 475 U.S. 625 (1986); *Massiah v. United States*, 377 U.S. 201 (1964); *Maine v. Moulton*, 474 U.S. 159 (1985); and *United States v. Wade,* 388 U.S. 218 (1967). (ECF No. 23 at 18–20.) None help him.

*Michigan v. Jackson* is a dead end because it was overruled in *Montejo v. Louisiana*. In *Montejo*, the Supreme Court specifically held that the Sixth Amendment does not prevent police from questioning charged and represented defendants. *See Montejo,* 556 U.S. at 782–83, 798–99.

*Massiah* and *Moulton* are similarly inapplicable. In *Massiah*, the defendant had already been indicted on several drug offenses and was free on bail pending trial. 377 U.S. at 201. Messiahs' co-defendant agreed to cooperate with federal authorities and, unbeknownst to Massiah, the authorities installed a radio transmitter in the co-defendant's car. *Id.* at 202–03. Massiah unknowingly made several incriminating statements to his co-defendant which the federal agents listened to via the radio transmitter. *Id.* at 203. The Supreme Court held that police cannot use another defendant to circumvent a defendant's invocation of his Sixth Amendment right to counsel and the admission of Massiah's inculpatory statements violated his Sixth Amendment rights. *Id.* at 206. In *Moulton*, a co-defendant agreed to cooperate with law enforcement on condition that no further charges would be filed against him. 474 U.S. at 163. Law enforcement encouraged the co-defendant to elicit admissions from Moulton concerning the charged crimes and arranged for the co-defendant to wear a wire while meeting with Moulton, knowing that the two defendants were meeting to discuss pending charges and plan trial strategy. *Id.* at 162–66. The Supreme Court stated that the government's "knowing exploitation" of such an opportunity to confront the defendant without counsel present "is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." *Id.* at 176. Accordingly, the Supreme Court concluded that the government's knowing circumvention of the defendant's right to counsel violated the Sixth Amendment. *Id.* Under *Massiah* and *Moulton,* the government violates a criminal defendant's Sixth Amendment right to counsel by (1) expressly or impliedly (2) using an informant (3) to elicit incriminating statement from a person (4) whose right to counsel has attached. *See Massiah*, 377 U.S. at 206; *Moulton*, 474 U.S. at 176. These cases have no application to Obregon. Nothing in the record suggests that law enforcement used a co-defendant, accomplice, or informant to elicit any of Obregon's statements and the petitioner makes no such allegation.

Finally, in *Wade*, the Supreme Court held that a post-indictment lineup constituted a critical stage of the proceeding and thus a defendant has the right to have counsel present for the lineup. 388 U.S. at 223–25. Obregon was never subjected to a line-up and *Wade* is thus also inapplicable. Accordingly, Obregon has not carried his high burden of showing he is entitled to habeas relief on his first and fourth grounds.

In conclusion, Obregon has not shown that the Wisconsin Court of Appeals unreasonably applied clearly established Supreme Court precedent in rejecting Obregon's claims. He has also failed to demonstrate that the state court decision involved an unreasonable determination of the facts. Accordingly, Obregon's petition for writ habeas corpus is denied.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitution right. 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (internal quotation marks and citation omitted). The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Obregon's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, is **DENIED**, and the case is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner, *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000), a certificate of appealability is **DENIED**.

Dated at Milwaukee, Wisconsin on October 29, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge